**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:18-cv-89-FDW**

| | | |
|---|---|---|
| JORDAN ANDREW JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| GEORGE T. SOLOMON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

    **THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 21). He is proceeding *in forma pauperis*. <u>See</u> (Doc. No. 7).

**I.    BACKGROUND**

    *Pro se* Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at Avery-Mitchell and Lanesboro Correctional Institutions between 2015 and 2016.[1] (Doc. No. 1). The original Complaint passed initial review on several claims and others were dismissed without prejudice. (Doc. No. 11). Plaintiff has now filed an Amended Complaint that is before the Court for initial review. (Doc. No. 21).

    Plaintiff names as Defendants: Department of Public Safety ("DPS") Director George T. **Solomon**; DPS Commissioner W. David **Guice**; DPS Secretary Frank L. **Perry**; DPS Inmate Grievance Examiners FNU **Williams**, Elizabeth D. **Wallace**, Jasmine **Belyeu**, and Jonnita **Baker**; DPS Western Regional Security Coordinator Jeffrey **Daniels**; DPS Disciplinary Hearing Officer Randy S. **Mull**; and the following Avery-Mitchell C.I. employees: Superintendent Mike **Ball**

---

[1] Plaintiff filed the Complaint when he was incarcerated at the Albemarle C.I. and his present address of record is at the Craggy Correctional Center.

1

("Superintendent Ball"); Assistant Superintendent for Programs Jason **Penland**; Assistant Superintendent for Custody and Operations Gregory P. **Taylor**; Classification Coordinator Tim **Laughrun**; Special Affairs Captain Brian **Watson**; Captain designated as Officer-in-Charge Renee **Reel**; Unit Manager of Avery Unit Adrian Z. **Crowe**; Unit Manager of Wautaga Unit Bryan Dale **Johnson**; Unit Manager of Yancey Unit FNU **Cornett**; Assistant Unit Manager of Avery Unit James C. **Waldroop**; Assistant Unit Manager of Wautaga Unit Robin **Hudgins**; Assistant Unit Manager of Yancey Unit Mark Randall **Geouge**; Correctional Sergeant for Avery Unit Bondy **Carroll**; Correctional Officers for Avery Unit Tyler **Stockton**, FNU **Banks**, and FNU **Ball** ("Officer Ball"); Correctional Officers for Restrictive Housing Unit FNU **Cooper**, FNU **Lewis**, FNU **Carpenter**, FNU **Lowry**, and FNU **Buchanan**; and Captain or Lieutenant designated as Officer-in-Charge **John Doe**.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff was in the Avery Unit of Avery-Mitchell C.I. on April 27, 2015, while Defendant Stockton was conducting a routine cell search at around 12:00 PM. Plaintiff returned to his assigned bunk, picked up a piece of candy from a chair, and put it in his mouth. Stockton abandoned his search and yelled "Hey, Hey," and seized Plaintiff "to ascertain whether the candy was contraband, based on some unquantifiable belief." (Doc. No. 21 at 10). Stockton blocked the aisle between bunks which restrained Plaintiff's freedom to walk away. Plaintiff turned to face Stockton and complied with his every request. Stockton ordered Plaintiff to spit on the floor and open his mouth. Plaintiff complied with each request promptly. Stockton seized Plaintiff by placing his hands on Plaintiff's shoulder, arms, and neck.

Stockton pushed on Plaintiff's back as he descended a stairway causing Plaintiff's balance to become unstable, "endangering his safety and placing him at a substantial risk of serious harm."

(Doc. No. 21 at 10). Downstairs, Stockton violently opened a door and pushed Plaintiff's back, forcing him through it. The door ricocheted off the wall and "nearly" hit Plaintiff's head. (Doc. No. 21 at 10). Stockton led Plaintiff, unrestrained, to an officer duty station. Stockton placed his hands on Plaintiff's shoulders and forcefully turned Plaintiff to face him and ordered Plaintiff to spit on the floor. Plaintiff again complied promptly without resisting or refusing. Stockton placed his hands on Plaintiff's shoulders and forcefully turned Plaintiff away from him, pushed Plaintiff against a stack of chairs, and cuffed Plaintiff "overly tight" behind his back. (Doc. No. 21 at 11). During this whole episode, Plaintiff was not in violation of any rule or policy, did not present a threat to himself or others, and did not resist Stockton's orders. Plaintiff was not physically injured as a result of this encounter. (Doc. No. 21 at 10).

Stockton never called for assistance and was in complete control of the situation. He did not attempt a "non-forcible method of extraction" as required by policy and the use of force was not justified by the policy. (Doc. No. 1 at 11). Policy requires that, when force is used, reasonable care must be taken to ensure inmates are not endangered by restraining them before removing them from the cell/dorm and escorting them while restrained. Stockton repeatedly endangered Plaintiff and did not restrain him until the conclusion of the use of force. Pursuant to policy, staff members who use, witness, or are made aware of a use of force have to report the incident. Defendants Carroll, Banks, and Officer Ball were present on Avery Unit and aware that Stockton used force on Plaintiff. Defendant Doe was notified by Carroll that a unit incident occurred "directly preceding the Use of Force" but each Defendant failed to respond reasonably. (Doc. No. 21 at 12).

Superintendent Ball and his designees including Doe, Crowe, and Carroll had a supervisory obligation to make sure that staff receive proper training in the use of force. Neither a medical examination for use of force nor a DC-387D via medical was completed as required by policy and

photographs were not taken of Plaintiff. Defendants Doe and Carroll had a duty to notify medical of the use of force and failed to do so. Plaintiff had a life and liberty interest to be medically examined for injuries related to a use of force and was denied that right.

Plaintiff was taken to restrictive housing and placed under close observation without due process. Plaintiff had a liberty interest not to be unreasonably placed in Administrative Restrictive Housing. This occurred because of the actions of Defendants Doe and Carroll. (Doc. No. 21 at 15). Plaintiff received a basic medical exam for intake and did not receive urinalysis. (Doc. No. 21 at 12).

Plaintiff produced a bowel movement at around 2:00 PM under the supervision of Defendants Cooper and Lewis. He was not given soap or hand sanitizer to wash his hands. At around 4:00 PM, he was given a meal without being allowed to wash his hands first, and he was not given utensils. At approximately 5:30 PM, he produced a bowel movement under the supervision of Cooper and Carpenter. He was not given supplies to wash his hands. At approximately 9:15 PM, he produced a bowel movement under Lowry and Buchanan's supervision. Lowry and Buchanan were uncertain about Close Observation Procedure so Reel instructed them to make Plaintiff inspect his own feces. Plaintiff was cuffed in front and a bedpan was placed in his cell. He asked for tissue paper to clean himself which was denied. Plaintiff was handed a pair of wooden tongue depressors and ordered to inspect his feces. Plaintiff informed Lowry and Buchanan of the procedures used during his first two bowel movements. They ignored that information and again ordered him to make the inspection. Plaintiff complied because he was afraid of incurring a C3 offense for willfully disobeying orders. Plaintiff inspected his feces with the wooden tongue depressors without having been given protective equipment (goggles, protective face mask, waterproof gloves) and was not given soap following the procedure. (Doc.

No. 21 at 17).

Pursuant to policy, Defendant Solomon and his designees including Defendants Guice, Perry and Superintendent Ball, were obligated to maintain constitutional and humane conditions of confinement by ensuring policy specifically governing close observation procedure provide adequate arrangements for hygiene. No such policy exists. Superintendent Ball and his designees including Defendants Doe and Reel had an obligation in their supervisory role to ensure that staff receive proper and effective training on close observation procedure. (Doc. No. 21 at 18). Plaintiff was required to be in a cell with his urine and feces on his hands for a prolonged period of time where Doe, Reel, Cooper, Lewis, Carpenter, Lowry, and Buchanan failed to provide him with basic elements of hygiene to wash his hands following each bowel movement, which disregarded their duty and placed Plaintiff in excessive risk of harm to his future health. Policy requires staff to provide equipment for inmates' safety in the tasks they are required to perform. Defendants Reel, Lowry and Buchanan failed to provide personal protective equipment necessary for handling human waste. Defendant Buchanan omitted a duty required by policy by forcing Plaintiff to inspect his own feces, disregarding an excessive risk to Plaintiff's future health. Policy requires staff who know of misconduct have a duty to report the incident.

Policy requires staff members who have knowledge of misconduct to report the incident. Defendants Reel and Lowry were present on the restrictive housing unit and were aware when Plaintiff was made to inspect his waste and neither responded reasonably. (Doc. No. 21 at 19). After completing the inspection, Plaintiff was un-cuffed and given only tissue paper to clean himself. The event was logged on the DC-141 (close observation log). (Doc. No. 21 at 19). The inspections were declared contraband-free and an officer no longer monitored Plaintiff.

On April 27, 2015, at approximately 5:30 AM, Plaintiff's water and plumbing fixtures were

5

activated. At approximately 8:00 PM, Plaintiff was given all-purpose cleaner and disinfectant. Defendants Reel, Lowry and Buchanan failed to give Plaintiff the basic elements of sanitation to clean his cell in a reasonable amount of time after the completion of close observation, at excessive risk to his future health. Pursuant to policy, Defendants Solomon and his designees including Defendants Guice, Perry, and Superintendent Ball, had an obligation to maintain constitutional and humane conditions by ensuring policy specifically governing close observation procedure provide adequate arrangements for sanitation in a reasonable time after an inmate is exposed to human waste, but no such policy exists. (Doc. No. 21 at 19-20).

No contraband was found or produced by Plaintiff and he was released from restrictive housing on April 30, 2015. (Doc. No. 21 at 12). That same day, Defendant Carroll informed Plaintiff that he was under investigation for a B8 offense, *i.e.*, leading Defendant Stockton away from his search on April 27. Plaintiff requested physical evidence (video footage) and investigation by an unbiased official. "Plaintiff's final written entry reported Defendant Stockton's Use of Force." (Doc. No. 21 at 13). On May 1, 2015, Defendant Crowe offered Plaintiff a plea to the offense. Plaintiff appealed to the Disciplinary Hearing Officer. Crowe issued Plaintiff an Offense Disciplinary Report that did not include Plaintiff's reported use of force as required by policy.

On May 1, 2015, Plaintiff's mother Denise Jones sent an email to Keith Acree reporting events related to close observation. (Doc. No. 21 at 20).

On May 2, 2015, Defendant Reel requested a written statement from Plaintiff about the April 27 close observation and Plaintiff wrote up a DC-138B. An incident report was conducted under the order of Superintendent Ball. (Doc. No. 21 at 20).

On May 5, 2015, Plaintiff attended his disciplinary hearing before Defendant Mull. Plaintiff entered a "plea of guilt" to the B8 offense. (Doc. No. 21 at 13). Plaintiff prepared a folder

of evidence to present in his defense which Defendant Mull was required by policy to give Plaintiff an opportunity to present. (Doc. No. 21 at 27). Defendant Mull violated policy by ordering Plaintiff to leave his folder outside the office and denied him the right to be heard. Defendant Mull issued Plaintiff a Record of Hearing form detailing the offense and discipline. It did not include Plaintiff's reported use of force as required by policy. (Doc. No. 21 at 13). Policy requires that, when an inmate reports a use of force, staff has a duty to respond reasonably by investigating. Defendants Mull, Superintendent Ball, Doe, Crowe, and Carroll witnessed Plaintiff's written report on the DC-138B and failed to act on that information.

On May 11, 2015, Defendant Carroll requested a second written statement from Plaintiff about the April 27 close observation and Plaintiff wrote up another DC-138B. (Doc. No. 21 at 20).

On May 13, 2015, Defendant Waldroop requested a written statement from Plaintiff regarding the April 27, 2015, use of force. An incident report was conducted under the order of Superintendent Ball. Plaintiff detailed the use of force on a DC-138B 16 days after the use of force. (Doc. No. 21 at 14). This violated policy, which requires an incident report to be completed within five working days. A DC-387D medical report was not completed for the incident report. Plaintiff did not receive a medical examination during the investigation. Superintendent Ball, Doe, and Waldroop had a duty to notify medical of a use of force and failed to reasonably respond. Superintendent Ball and Defendant Doe failed to uphold their responsibility of investigating which is required by policy of Officers-in-Charge.

On May 26, 2015, Plaintiff sent a letter to the North Carolina Department of Public Safety main office requesting that video of the close observation be located and preserved. (Doc. No. 21 at 20). Plaintiff also submitted a grievance that day about the close observation. Jacob Hundley signed and dated the grievance as "received" and forwarded it to the appropriate party. (Doc. No.

21 at 21). On May 27, 2015, Defendant Watson personally returned the grievance without the official written reason for the rejected which violates policy. Defendant Watson unofficially rejected the grievance, stating that an appropriate remedy had not been listed and that preservation of a video recording could be requested from the Superintendent via an Inmate Request Form. (Doc. No. 21 at 21). Defendant Watson failed to accept Plaintiff's "pure grievance" which listed a remedy appropriate per policy which deprived Plaintiff of a means to challenge unlawful conduct. (Doc. No. 21 at 22).

Plaintiff submitted a grievance about the close observation on May 27, 2015. Merit was found in Plaintiff's allegations. (Doc. No. 21 at 20).

On June 3, 2015, Defendant Hudgins gave Plaintiff a green inmate copy of his grievance outside the prescribed time limit which obstructed Plaintiff's Administrative Remedy Procedure.

On June 15, 2015, Plaintiff received a Step One response to his grievance from Defendant Johnson and Plaintiff appealed to Step Two. On July 7, 2015, Plaintiff received a Step Two response from Defendant Penland and Plaintiff appealed to Step Three. Defendants Penland, Johnson, and Hudgins failed to provide Plaintiff responses within the time limit which obstructed Plaintiff's Administrative Remedy Procedure. Defendants Penland, Johnson, and Hudgins failed to provide Plaintiff with written notice of an extension as required by policy which inhibited Plaintiff's Administrative Remedy Procedure.

Inmate Connor O'Neill had a conversation with Defendant Buchanan on June 22, 2015, and completed an affidavit.

On July 10, 2015, Plaintiff's grievance regarding the use of force was accepted. On July 13, 2015, Plaintiff received a Step One response from Defendant Johnson, stating "Defendant Stockton has been Counseled and Corrective action taken." (Doc. No. 21 at 22). Plaintiff appealed

to Step Two. On August 5, 2016, Plaintiff received a Step Two response from Defendant Penland and Plaintiff appealed to Step Three. Plaintiff discovered that the tracking number did not correlate to the accepted grievance. Plaintiff believes that Defendant Hudgins administered the tracking number.

On August 6, 2015, Plaintiff presented additional facts related to the close observation on a grievance but it was rejected because it exceeded the 90-day time limit. (Doc. No. 21 at 21).

On August 6, 2015, Plaintiff presented facts related to his disciplinary hearing in a grievance. It was rejected because it exceeded the 90-day time limit. (Doc. No. 21 at 24). Defendants Penland, Johnson, and Hudgins failed to complete Plaintiff's previously-submitted grievance within the time limit, causing Plaintiff to miss the deadlines for new grievance submission, which deprived him of a means to challenge unlawful conduct.

On August 7, 2015, Plaintiff's grievance regarding due process (delayed distribution of inmate grievance copy) was accepted and corrective action was said to have been taken. (Doc. No. 21 at 28).

On August 25, 2015, Plaintiff received a Step One response to his grievance from Defendant Johnson. Plaintiff appealed to Step Two. (Doc. No. 21 at 31). Defendants Johnson and Hudgins failed to provide Plaintiff's response within the prescribed time limit and failed to provide Plaintiff a written notice of extension as required by policy, which obstructed and inhibited Plaintiff's Administrative Remedy Procedure. On October 19, Plaintiff sent a letter to the Grievance Resolution Board. The Step Three Response dated October 20, 2015, was received by Plaintiff on November 3, 2015. On November 10, 2015, Plaintiff's grievance about due process ("Being void of indications,") was accepted. (Doc. No. 21 at 32). On November 19, 2015, Plaintiff sent a letter and relevant documents to Defendant Perry.

On September 20, 2015, Plaintiff sent a letter to Defendant Taylor. (Doc. No. 21 at 28).

On October 9, 2015, Plaintiff's grievance about denial of access to the courts was accepted. (Doc. No. 21 at 23, 24). Plaintiff sent a letter and relevant documents to the Grievance Resolution Board on October 14, 2015. Plaintiff sent a letter to Defendant Penland on October 30, 2015. Plaintiff sent letters to Defendants Taylor and Perry on November 4, 2015. Plaintiff sent a letter to the Grievance Resolution Board on December 30, 2015. Plaintiff received letters dated December 31, 2015, and March 21, 2016, from Ina Hinton. Plaintiff sent Hinton relevant documents and a letter on January 14, 2016. Plaintiff received a Step Three Response dated February 8, 2016, from Defendant Williams. Plaintiff discovered that the tracking number did not correlate with the accepted grievance. Defendant Solomon and "each staff member" who participated in Plaintiff's Administrative Remedy Procedure including Defendants Perry, Williams, Penland, Johnson, and Hudgins had an obligation to provide grievance responses correlating to Plaintiff's accepted grievances and failed to do so, which deprived him of a means to challenge unlawful conduct. (Doc. No. 21 at 24).

On October 8, 2015, Plaintiff's grievance about due process (obstructions) was accepted. (Doc. No. 21 at 30). Defendants Solomon, Perry, and Williams failed to provide Plaintiff's response within the prescribed time limit and failed to provide him a written notice of extension as required by policy, which obstructed and inhibited Plaintiff's Administrative Remedy Procedure. Defendant Solomon and each staff member who participated in Plaintiff's Administrative Remedy Procedure, including Defendants Perry, Williams, Penland, Johnson, and Hudgins, were obligated to complete grievance exhaustion within the prescribed time limit and failed to do so which obstructed Plaintiff's Administrative Remedy Procedure. Upon reviewing the green inmate copy of his grievance, Plaintiff discovered that it had no date, signature, or

10

indication of acceptance or rejection, which violates policy. Defendants Johnson and Hudgins failed to provide Plaintiff a copy of the grievance which inhibited Plaintiff's Administrative Remedy Procedure.

On October 15, 2015, Plaintiff was transferred from Avery-Mitchell C.I. to Lanesboro C.I. and was assigned to a Vocational Program. (Doc. No. 21 at 25). Plaintiff did not request the transfer. Plaintiff filed several grievances prior to being transferred and requested no reprisal such as transfer as a result of his Administrative Remedy Procedure. Plaintiff reported threats of transfer made by Avery-Mitchell correctional officials prior to October 15, 201. Multiple officials also "implied a transfer in response to Plaintiff's Administrative Remedy Procedure. (Doc. No. 21 at 25). Lanesboro C.I. is widely known to be more dangerous than Avery-Mitchell, with the reputation of "the worst prison in North Carolina." (Doc. No. 21 at 25). Superintendent Ball and Defendants Penland, Taylor, and Laughrun were in control of Plaintiff's classification and transferred him in violation of policy and for exercising his rights through grievances. Plaintiff's mother reported the transfer to Todd Pinion on October 19, 2015, and Plaintiff as transferred back to Avery-Mitchell on October 27, 2015. Plaintiff sent a letter to Superintendent Ball and Defendant Taylor on October 28 and 30, 2015. On November 23, 2015, Plaintiff's grievance regarding the retaliatory transfer was accepted. (Doc. No. 21 at 26).

On October 18, 2015, Plaintiff sent a letter to the Grievance Resolution Board. Plaintiff received a Step Three grievance response from Defendant Wallace dated September 30, 2015, was received by Plaintiff on October 21, 2015. Defendants Solomon, Perry, and Wallace failed to provide Plaintiff's response within the prescribed time limit which obstructed his Administrative Remedy Procedure. (Doc. No. 21 at 29). Defendants Solomon, Perry, and Wallace failed to provide Plaintiff with written notice of an extension as required by policy which inhibited his

Administrative Remedy Procedure. Defendant Solomon and each staff member who participated in Plaintiff's Administrative Remedy Procedure including Defendants Perry, Wallace, Penland, Johnson, and Hudgins had an obligation to complete grievance exhaustion within the prescribed time limit and their failure to do so obstructed his Administrative Remedy Procedure.

On October 21, 2015, Plaintiff sent a "Motion to Locate and Preserve Evidence" regarding video recordings of the use of force, to Defendant Perry and Superintendent Ball. (Doc. No. 21 at 14, 20).

On October 29, 2015, Plaintiff received a Step One response to his grievance from Defendant Johnson and he appealed to Step Two. (Doc. No. 21 at 32). Defendants Johnson and Hudgins failed to provide Plaintiff's response within the prescribed time limit and failed to provide a written notice of extension as required by policy, which obstructed and inhibited Plaintiff's Administrative Remedy Procedure. On November 19, 2015, Plaintiff received a Step Two response from Defendant Penland and Plaintiff appealed to Step Three. (Doc. No. 21 at 32). The Step Three response was dated March 15, 2016 from Defendant Belyeu and it was received by Plaintiff on April 5, 2016. (Doc. No. 21 at 33). Defendants Solomon, Perry, and Belyeu failed to provide Plaintiff's response within the prescribed time limit and failed to provide him with a written notice of extension as required by policy, which obstructed and inhibited his Administrative Remedy Procedure. Defendant Solomon and each staff member who participated in Plaintiff's Administrative Remedy Procedure including Defendants Perry and Belyeu had an obligation to complete grievance exhaustion within the prescribed time limit and failed to do so, which obstructed Plaintiff's Administrative Remedy Procedure.

On November 30, 2015, Plaintiff received a Step One response from Defendant Geouge and Plaintiff appealed to Step Two. (Doc. No. 21 at 33). On December 8, 2015, Plaintiff received

a Step Two response from Defendant Penland. Upon reviewing the response, Plaintiff discovered that an answer was provided at the facility by Defendant Penland which is contrary to policy because he was allegedly involved in the incident. (Doc. No. 21 at 34). Defendant Penland failed to recuse himself which compromised the procedure. Yancy Unit Management including Defendants Cornett and Geouge had a duty to forward Plaintiff's grievance to an appropriate party and failed to do so which compromised Plaintiff's Administrative Remedy Procedure. On December 8, 2015, Plaintiff sent letters to Defendant Perry and Todd Pinion. On January 15, Plaintiff's grievance about due process (failure to recuse) was accepted and fault was admitted. On January 11, 2016, Plaintiff received a Step Two response from Defendant Penland and Plaintiff appealed to Step Three. Plaintiff received the Step Three response dated April 1 from Defendant Baker, which Plaintiff received on April 12, 2016. (Doc. No. 21 at 35). Defendants Solomon, Perry, and Baker failed to provide Plaintiff's response within the prescribed time limit and failed to provide him with written notice of extension as required by policy, which obstructed and inhibited his Administrative Remedy Procedure. Defendant Solomon and each staff member who participated in Plaintiff's Administrative Remedy Procedure, including Defendants Perry and Baker, had an obligation to complete grievance exhaustion within the prescribed time limit and failed to do so, obstructing Plaintiff's Administrative Remedy Procedure.

On December 31, 2015, Plaintiff's grievance about due process (obstructions) was accepted. Defendants Penland, Johnson, and Hudgins failed to provide Plaintiff's response within the prescribed time limit and failed to provide written notice of an extension as required by policy which obstructed and inhibited Plaintiff's Administrative Remedy Procedure.

On January 4, 2016, Defendant Daniels was dispatched by Western Regional Director Todd Pinion to discuss Plaintiff's multiple claims against Avery-Mitchell C.I. staff. Plaintiff sent

letters to Pinion on January 5, 2016, and received a letter dated January 11, 2016, from Defendant Daniels. Plaintiff sent a letter to Daniels on January 16, 2016, and received letters from him dated January 19 and 26, 2016.

On January 15, 2016, Plaintiff received a Step One grievance response from Defendant Waldrop and Plaintiff appealed to Step Two. (Doc. No. 21 at 35). On January 15, 2016, Plaintiff received a Step Two response from Pinion and he appealed to Step Three. Plaintiff received the Step Three response from Defendant Baker dated April 1, 2016, on April 12, 2016. (Doc. No. 21 at 35). Defendants Solomon, Perry, and Baker failed to provide Plaintiff's response within the prescribed time limit and failed to provide written notice of extension as required by policy, which obstructed and inhibited his Administrative Remedy Procedure. (Doc. No. 21 at 36).

Defendant Buchanan violated policy by disclosing information about Plaintiff to another inmate, including details about Plaintiff's conduct while being exposed to unconstitutional conditions of confinement including Plaintiff's observation, custody, and future transfer. (Doc. No. 21 at 26). Defendant Buchanan accused Plaintiff of reporting staff misconduct which portrayed him as a "snitch" and placed him at risk of being attacked by another inmate. Inmate Donald Hodges discussed Plaintiff with Defendants Watson and Daniels on January 7, 2016, and completed an affidavit. (Doc. No. 21 at 27). Defendants Daniels and Watson disclosed Plaintiff's legal proceedings about staff misconduct to another inmate and stated that Plaintiff is a "nuisance to staff at Avery-Mitchell." (Doc. No. 21 at 27). This portrayed Plaintiff as a "snitch" and placed him at risk of being attacked by another inmate. (Id.).

Plaintiff seeks declaratory judgment, preliminary and permanent injunction, compensatory and punitive damages, costs, fees, a jury trial, and any additional relief the Court deems just, proper, and equitable.

## II.     PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013).  It is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).  "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24.  To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Id. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017).

The Amended Complaint includes a claim for preliminary injunctive relief. Reviewing Plaintiff's allegations based on the relevant factors, Plaintiff is not entitled to a preliminary injunction.  Plaintiff fails to explain how he is being irreparably harmed during the pendency of the instant action, especially in light of the fact that he no longer resides at either of the institutions addressed in the Amended Complaint, and he fails to show that he is likely to prevail. Plaintiff simply has not shown that he is entitled to a temporary restraining order or a preliminary injunction under these circumstances and the motion incorporated in the Amended Complaint will therefore be denied.

## III.     STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief.

Id.

**IV.    DISCUSSION**

**(1)    Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004). The Rules require a short and plain statement of the claims. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002).

The body of the Complaint refers to several individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Therefore, the Amended Complaint is dismissed as to individuals who are not formally named as defendants.

**(2)    Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from

inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984); <u>see</u> <u>Farmer</u>, 511 U.S. at 832-34.

**(a) <u>Excessive Force</u>**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials who may not use excessive physical force against prisoners. <u>See</u> <u>Hudson</u>, 503 U.S. at 1. A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>see also</u> <u>Hudson</u>, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," <u>Rhodes</u>, 452 U.S. at 347. The second requirement is that a prison official must have a "sufficiently culpable state of mind." <u>Wilson</u>, 501 U.S. at 297, 302-03; <u>Hudson</u>, 503 U.S. at 5, 8.

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." <u>Hudson</u>, 503 U.S. 1, 4 (1992); <u>see</u> <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant

injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, 2012 WL 527597 (D. Md. Feb. 16, 2012).

Plaintiff alleges that Defendant Stockton saw him put something in his mouth during a cell search, seized him, ordered him to spit, pushed him down a stairway, guided him through a doorway that *nearly* hit his head, brought him to an office, and eventually handcuffed him. Plaintiff admits that none of Stockton's actions resulted in any injury. Plaintiff contends that Defendant Stockton's use of force was unreasonable, unnecessary, outside the measure of good faith, beyond any penological need, and posed a substantial risk of serious harm.

Despite Plaintiff's conclusory allegations of impropriety, nothing about Defendant Stockton's alleged actions was malicious or sadistic, but rather, a good-faith effort to maintain or restore discipline by attempting to identify and seize contraband. Plaintiff has failed to state a plausible excessive force claim and it will be dismissed.

Because Plaintiff has failed to state an excessive force claim against Defendant Stockton, the related claims about failing to adequately document, investigate, supervise and train, provide medical care, or provide remedial measures with regards to the alleged use of force also necessarily fail to state a claim and will be dismissed. See generally Jackson v. Sampson, 536 Fed. Appx. 356, 357 (4th Cir. 2013) (unpublished) ("prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"); Waybright v. Frederick Co, Md., 528 F.3d 199, 203 (4th Cir. 2008) ("supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.").

**(b) Medical Deliberate Indifference**

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff contends that he was not medically examined after the April 27, 2015, use of force incident with Stockton, or during the investigation of that incident in violation of DPS rules and

regulations. Plaintiff admits that he was not injured in the April 27 incident and therefore fails to show that he had any serious medical need. Nor can Defendants' failure to provide medical care for non-existent injuries rise to the level of deliberate indifference. Therefore, Plaintiff's medical deliberate indifference claim is insufficient to proceed and will be dismissed.

### (c) Conditions of Confinement

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson, 501 U.S. at 297-99. A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Deprivation of basic sanitary conditions such as exposure to human waste without the ability to clean oneself can constitute an Eighth Amendment violation. See, e.g., Hope v. Pelzer, 536 U.S. 730, 738 (2002) (deprivation of bathroom breaks for prisoner attached to a hitching post for seven hours created a "risk of particular discomfort and humiliation"); Budd v. Motley, 711 F.3d 840, 843 (7th Cir. 2013) ("allegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir.2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment."); Young v. Quinlan, 960 F.2d 351, 365 (3d Cir.1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days...."), *superseded by statute on other grounds as recognized by* Nyhuis v. Reno, 204 F.3d 65, 71 n. 7 (3d Cir .2000);

Howard v. Adkison, 887 F.2d 134, 137 (8th Cir.1989) (noting that "inmates are entitled to reasonably adequate sanitation" and finding Eighth Amendment violation where cell was "covered with ... human waste"); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

Plaintiff alleges that, on April 27, 2015, he was placed in "close observation" by Defendants Doe and Carroll where he experienced unsanitary conditions including exposure to human waste. Defendants Doe, Reel, Cooper, Lewis, Carpenter, Lowry, and Buchanan deprived Plaintiff of hygienic materials. Defendants Reel, Lowry, and Buchanan failed to provide personal protection equipment for handling human waste. Defendant Buchanan subjected him to conditions posing a substantial risk of serious harm by forcing him to inspect his own feces. Defendants Solomon, Guice, Perry, and Superintendent Ball failed to create a policy adequately addressing hygiene and sanitation during close observation, and that Superintendent Ball and Defendants Doe, and Reel failed to adequately train and supervise their subordinate staff in close observation, which is an area critical to ensuring prisoner health. Defendants Reel and Lowry consented to unconstitutional behavior of subordinates.

Although Plaintiff does not allege that he was actually harmed by the incident, he has sufficiently alleged a substantial risk of serious harm because the health risks of prolonged exposure to human excrement are obvious. See DeSpain, 264 F.3d at 974–75 (finding substantial risk of serious harm where prisoner was exposed to standing water in his cell that contained his own urine and other prisoners' waste for 36 hours). Plaintiff further alleges that his rights were violated because several supervisory Defendants failed to sufficiently train and supervise their staff and establish policy to ensure such violations do not occur. The supervisory claims will be

22

permitted to proceed.

Plaintiff's claim that he was exposed to unconstitutional conditions of confinement will therefore be permitted to proceed against Defendants **Superintendent Ball, Buchanan, Carpenter, Carroll, Cooper, Doe, Guice, Lewis, Lowry, Perry, Reel,** and **Solomon.**

**(d)** <u>**Failure to Protect**</u>

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." <u>Farmer</u>, 511 U.S. at 833 (internal quotations omitted). To obtain relief under § 1983 on a claim of failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury" resulting from that failure; and (2) the prison officials had a "sufficiently culpable state of mind," which in this context is deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. A prison official is "deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows and disregards' the risk." <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004) (quoting <u>Farmer</u>, 511 U.S. at 837). "It is not enough to prove that the official should have known of the risk; instead, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he should draw the inference.'" <u>Kartman v. Markle</u>, 582 Fed. Appx. 151, 153 (2014) (quoting <u>Farmer</u>, 511 U.S. at 837). A showing of negligence does not rise to the level of deliberate indifference. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).

Plaintiff claims that Defendants Daniels, Watson, and Buchanan disclosed information about him that "may" lead another inmate to attack him. (Doc. No. 21 at 40). Defendant Buchanan allegedly violated policy by telling another inmate about Plaintiff's conduct while he was on close observation, and Defendants Watson and Daniels allegedly disclosed Plaintiff's legal proceedings about staff misconduct and called him a "nuisance." (Doc. No. 21 at 27). This allegedly portrayed

Plaintiff as a snitch and placed him at risk of being attacked by another inmate.

Plaintiff has failed to allege either that he sustained significant physical or emotional injury because of any Defendant's actions, or that any Defendant had a sufficiently culpable state of mind or was anything more than negligent. Therefore, this claim will be dismissed.

**(3)**     **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV.

**(a) Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

Plaintiff alleges that various grievances were rejected, returned, mishandled, delayed, and denied by Defendants Solomon, Perry, Williams, Wallace, Belyeu, Baker, Penland, Taylor, Johnson, Cornett, Hudgins, and Geouge. He claims that there is a longstanding pattern of ignoring and neglecting due process with regards to the Administrative Remedy Procedure.

Because Plaintiff has no federal constitutional right to engage in the prison grievance procedure, any alleged violation of that procedure cannot constitute a due process violation. Therefore, Plaintiff's due process claim with regards to his prison grievances will be dismissed.

**(b) Classification & Housing**

A prisoner does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). "[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges …

are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*).

Plaintiff appears to allege that Defendants Doe and Carroll placed him in Administrative Restrictive Housing without due process. Plaintiff has sufficiently alleged that the conditions he experienced on Administrative Restrictive Housing constituted atypical and significant hardship. Therefore, this claim will be allowed to proceed against Defendants **Doe** and **Carroll.**

### (c) Disciplinary Proceedings

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary

hearing decision was based upon "some evidence." <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. <u>See</u> <u>Kelly v. Cooper</u>, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence or when wholly arbitrary and capricious. <u>See</u> <u>Hill</u>, 472 U.S. at 456; <u>see also</u> <u>Baker v. Lyles</u>, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Plaintiff alleges that Defendant Mull did not provide him with the opportunity to present evidence at the disciplinary hearing relating to the April 27 incident. Plaintiff's claim that Defendant Mull refused to allow him to present evidence in defense of the disciplinary charge is sufficient to proceed. Therefore, the claim that Plaintiff was deprived of due process in the disciplinary proceedings will be permitted to proceed against Defendant **Mull.**

### (d) <u>Use of Force Investigation/Report</u>

"The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. <u>See</u> <u>generally</u> <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 196 (1989); <u>see</u>, <u>e.g.</u>, Vinyard <u>v. Wilson</u>, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim); <u>Savage v. County of Stafford, Va.</u>, 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged failure to document and investigate arrestee's alibi did not violate due process).

Plaintiff complains that various Defendants failed to submit written use of force wrote use-of-force reports, take Plaintiff for a medical examination, investigate the incident, or collect evidence as required by DPS policy.

Plaintiff's claim for failure to investigate the incident and collect evidence it is insufficient to proceed because Plaintiff had no constitutional right to an investigation. Because Plaintiff had no right to an investigation or report on the alleged use of force, Defendants did not violate his rights by failing to adequately do so and this claim is dismissed.

**(e) <u>Access to Courts</u>**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977); <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Casey</u>, 518 U.S. at 355.

Plaintiff alleges that Defendants Solomon, Perry, Williams, Penland, Watson, Johnson, and Hudgins infringed on Plaintiff's substantive rights by obstructing his Administrative Remedy Procedure which deprived him of a means to challenge unlawful conduct.

Plaintiff has failed to state a claim for the denial of access to the courts because prison grievances, rather than non-frivolous post-conviction or civil rights legal claims, were allegedly frustrated or impeded by Defendants' actions. Plaintiff's attempt to recharacterize his grievance-

based claim as one of denial of access to the courts is rejected. <u>See</u> Claim (3)(a), *supra.* Plaintiff's claim that he was deprived of access to the courts is therefore insufficient to proceed and will be dismissed.

**(3)** <u>**Retaliation**</u>

Prison officials may not retaliate against an inmate for exercising a constitutional right. <u>See</u> <u>Hudspeth</u>, 584 F.2d at 1347. To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. <u>See</u> <u>American Civil Libs. Un. of Md., Inc. v. Wicomico Cnty.</u>, 999 F.2d 780, 785 (4th Cir. 1993) (citing <u>Huang v. Board of Governors of Univ. of N.C.</u>, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995); <u>accord</u> <u>Ponchik v. Bogan</u>, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); <u>Collinson v. Gott</u>, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); <u>McDonald v. Hall</u>, 610 F.2d 16, 18–19 (1st Cir. 1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." <u>Adams</u>, 40 F.3d at 74.

As a general matter, a criminal defendant has no basis for complaint when he is transferred from one institution to another; the fact that life in one prison might be more disagreeable than in another is alone insufficient to warrant due process protections. <u>Meachum v. Fano</u>, 427 U.S. 215

(1976); see Montanye v. Haymes, 427 U.S. 236 (1976) (the due process clause does not require hearings in connection with transfers, whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive). However, transfers may be judicially challenged when they are retaliatory or are used as a means of punishing the exercise of constitutional freedoms. See Montanye, 427 U.S. at 242. To successfully argue retaliatory transfer in violation of his constitutional rights pursuant to § 1983, a plaintiff "must prove that a desire to retaliate was the actual motivating factor behind the transfer." Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir.1996). In other words, the plaintiff must prove that but for his protected First Amendment activity, he would not have been transferred. Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999).

Plaintiff alleges that Defendants Superintendent Ball, Penland, Taylor and Laughrun transferred him to Lanesboro C.I., which is known for being dangerous, for exercising his Administrative Remedy Procedure. Plaintiff has stated a plausible claim for retaliation against Defendants Superintendent **Ball, Penland, Taylor** and **Laughrun** and the retaliation claim will be permitted to proceed.

**(4)    Search & Seizure**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. Amend. IV. The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)). While "imprisonment carries with it the circumscription or loss of many significant rights," the Supreme Court nevertheless cautioned that "prisons are not beyond the reach of the

Constitution." Id. at 523–24. A prisoner thus retains "some legitimate expectation of privacy in his person" under the Fourth Amendment. See King v. Rubenstein, 825 F.3d 206, 214–15 (4th Cir. 2016); see also United States v. Edwards, 666 F.3d 877, 883 (4th Cir. 2011) (the Supreme Court has "developed a flexible test to determine the reasonableness of a broad range of sexually invasive searches....") (citation and internal quotation marks omitted). The following factors determine the reasonableness of the search: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Searches conducted "in an abusive fashion … cannot be condoned." Wolfish, 441 U.S. at 560. The deference afforded to prison administrators "does not insulate from review actions taken in bad faith and for no legitimate purpose." Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). However, society does not "recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and …, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 525.

Plaintiff appears to allege that Defendant Stockton illegally searched and/or seized him on April 27, 2015. Plaintiff alleges that Defendant Stockton was searching a cell when Plaintiff took a piece of candy from a chair and put it in his mouth. Stockton seized Plaintiff and made him spit to ascertain whether the candy was contraband. Plaintiff conclusively states that Defendant Stockton employed unreasonable and unnecessary force against him that was outside the measure of good faith and beyond any penological need.

Plaintiff's description of Defendant Stockton's alleged actions does not show abuse, excessiveness, bad faith, or lack of penological justification. He has therefore fails to state a plausible Fourth Amendment claim and it will be dismissed.

## V.    CONCLUSION

Plaintiff has stated plausible claims for unconstitutional conditions of confinement against Superintendent Ball, Buchanan, Carpenter, Carroll, Cooper, Doe, Guice, Lewis, Lowery, Perry, Reel, and Solomon for due process violations against Doe and Carroll (administrative housing) and Mull (disciplinary proceedings); and for retaliation against Superintendent Ball, Penland, Taylor, and Laughrun. The remaining claims dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Motion for Preliminary Injunction that is incorporated in the Amended Complaint is denied.

**IT IS, THEREFORE, ORDERED** that:

1.    The Amended Complaint passes initial review on claims of unconstitutional conditions of confinement against **Superintendent Ball, Buchanan, Carpenter, Carroll, Cooper, Doe, Guice, Lewis, Lowry, Perry, Reel,** and **Solomon,** for due process violations against **Doe** and **Carroll** (administrative housing), and **Mull** (disciplinary proceedings); and for retaliation against **Superintendent Ball, Penland, Taylor,** and **Laughrun.**

2.    The remaining claims are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3.    The Motion for Preliminary Injunction that is incorporated in the Amended Complaint is **DENIED**.

4.    **IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Carroll, Doe,** and **Solomon**, who are current or former employees of NC DPS.

5.    **IT IS FURTHER ORDERED** that the Clerk of Court shall substitute the parties'

names as follows:

**Marty Cooper** for "FNU Cooper"

**Gilbert Lewis** for "FNU Lewis"

**Stephen P. Carpenter** for "FNU Carpenter"

**Scotty Lowery** for "FNU Lowry"

**Joseph Buchanan** for "FNU Buchanan"

Signed: November 28, 2018

Frank D. Whitney
Chief United States District Judge